# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MENDELSOHN, DRUCKER, & ASSOCIATES, P.C. | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| TITAN ATLAS MANUFACTURING, INC., | : | NO. 12-0453 |
| and | : | |
| JEREMY BLACKBURN, | : | |
| Defendants | : | |

**MEMORANDUM RE: REASONS FOR GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**Baylson, J.**                                                                                                      **January 22, 2013**

## I. INTRODUCTION

Plaintiff, Mendelsohn, Drucker, & Associates, P.C. ("Mendelsohn"), brought this action against Defendants, Titan Atlas Manufacturing, Inc. ("Titan") and Jeremy Blackburn, for breach of contract and fraud. Currently before the Court is Plaintiff's Motion for a Preliminary Injunction to enjoin Defendants from dissipating Titan's assets. For the reasons stated below, the motion was GRANTED on January 22, 2013, but the scope of the injunction is significantly less than Plaintiff requested.

## II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff, Mendelsohn, is a law firm based in Philadelphia, Pennsylvania. Defendant, Titan, is a corporation with a principal place of business in Delaware. Mr. Blackburn, a resident of New York City, is the CEO of Titan.

Between February 2011 and December 2011, Mendelsohn served as legal counsel to Titan in a patent matter litigated in a Virginia court. During this time, Mendelsohn sent ten invoices to Titan totaling $442,511.06. Despite Blackburn's repeated assurances that payment was forthcoming, Titan only paid $40,000, or less than ten percent of the amount it owed.

Substantial evidence suggests that Blackburn intentionally misled Mendelsohn about Titan's true intention and/or ability to pay the balance. This includes documentation suggesting that, after Mendelsohn warned of its intent to withdraw as counsel due to non-payment, Blackburn used a dummy United States Postal Service (U.S.P.S.) tracking number to induce Mendelsohn into submitting an additional filing in the Virginia patent matter. Blackburn emailed the U.S.P.S. tracking number to one of Mendelsohn's attorneys (David Cargille) with the obvious implication that the tracking number was proof that a check had been in placed in the mail. Hearing Ex. P12, Email 35. When Mendelsohn later notified Blackburn that it did not receive the check, Blackburn responded: "If the check from last week shows up do not deposit, we will be putting a stop pay on the check." Hearing Ex. P12, Email 38. As Mendelsohn later learned, however, the U.S.P.S. has no record of the tracking number that Blackburn referenced in his email.

After its repeated requests for payment went unheeded, Mendelsohn was warranted to file a motion to withdraw, which the Virginia court granted on December 5, 2011. Titan then retained the law firm DunlapWeaver, PLLC to represent it in for the remainder of the proceeding. Once again, however, Titan refused to pays its legal fees. Thus, after providing Titan ten months of legal representation, DunlapWeaver filed an emergency motion to withdraw, which the court granted on October 22, 2012.

On January 27, 2012, Mendelsohn initiated this action against Titan and Blackburn to recover the balance on its account as well as punitive damages for Blackburn's allegedly fraudulent behavior. To defend itself in the proceeding, Titan and Blackburn retained the Obermayer Rebmann Maxwell & Hippel ("Obermayer") law firm. On December 3, 2013, however, the Obermayer firm filed a motion to withdraw because, despite its repeated requests to Titan and Blackburn to make the required payments, "[t]he vast majority of the fees and costs have gone unpaid for more than 120 days." (ECF No. 47). A hearing on January 11, 2013 addressed Obermayer's motion. Prior to the hearing, the Court issued an Order stating that if Titan did not make arrangements to pay its current counsel, or retain new counsel, the Court could exercise its authority to enter a default judgment against it. (ECF No. 57). See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 918 (3d Cir. 1992) ("Nor do we doubt that the district court in this case could have imposed a default judgment against the defendants for failure to comply with its own unambiguous orders to obtain substitute counsel . . . ."); see also Fetter v. North American Alcohols, Inc., No. 06-4088, 2009 WL 2179659, at *3-4 (E.D. Pa. July 21, 2009); Critelli v. Culture Club of NYC, Inc., No. 05-5877, 2010 WL 5392677, at *3 (D.N.J. Dec. 7, 2010); Harrington v. All American Plazas, Inc., No. 08-3848, 2010 WL 2710573, at *2 (D.N.J. July 7, 2010).

At the January 11 hearing, Obermayer's attorney informed the Court that Defendants had not made any further payments on its outstanding balance. Mr. Blackburn, who attended the hearing, confirmed that neither he nor Titan had made the payments, and that he could not foresee having the capacity to do so. The Court thereupon granted Obermayer's motion to withdraw. After granting Obermayer's motion, the Court reiterated that Titan, as a corporation, could not represent itself pro se in the proceeding against Mendelsohn. See Rowland v. California Men's Colony, Unit II Men's Advisory, 506 U.S. 194, 201-02 (1993) ("It has been the

3

law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."). After inquiring of Titan's capacity to retain new counsel, Blackburn informed the Court that it did not have the assets to do so. Lacking any apparent ability to afford counsel, the Court exercised its authority to enter a default judgment against Titan. (ECF No. 64).

In addition to resolving Obermayer's motion to withdraw, the January 11 hearing also addressed Mendelsohn's motion for a preliminary injunction. Mendelsohn introduced evidence into the record to support its motion. Blackburn, who testified at the hearing, admitted to the non-payment of Mendelsohn's bills and stated that Titan was in the process of liquidating its assets. As the last remaining paid employee of Titan, Blackburn testified that his primary responsibility was to complete the liquidation as quickly as he could. He gave further testimony as to the status of Titan's assets and current financial condition.

### III.    LEGAL STANDARD[1]

A preliminary injunction is "an extraordinary remedy which should be granted only in limited circumstances." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck, 290 F.3d 578 (3d Cir. 2002) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir.1989))). "In exercising its discretion, the District Court must be convinced that the following factors favor granting preliminary relief: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." Id.

---

[1] The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## IV. DISCUSSION

The Court is satisfied that the four aforementioned factors support granting Plaintiff's motion for preliminary injunction, but with only limited relief at this time.

### 1. Likelihood of Success on the Merits

There is no dispute in this case that Titan executed a contract with Mendelsohn to secure its legal services in the Virginia patent proceeding. There is also no dispute that Titan has never paid the $402,511.06 in legal fees that Mendelsohn accrued as Titan's counsel. Accordingly, the Court finds a strong likelihood that Mendelsohn will succeed on the merits of its breach of contract claim.

Mendelsohn is also likely to prevail on at least some of its common law fraud claims. While "[i]t is well established that the breach of a promise to do something in the future is not actionable in fraud," Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278, 290 (Pa. Super. 2010), a "statement as to future plans or intentions" that "knowingly misstates the speaker's true state of mind when made" is fraudulent under Pennsylvania law, Nat'l Data Payment Sys., Inc. v. Meridian Bank, 212 F.3d 849, 859 (3d Cir. 2000). Here, Mendelsohn has produced evidence that strongly suggests that several of Blackburn's assurances of imminent payment "knowingly misstate[d]" his "true state of mind when made." Mendelsohn has introduced emails establishing that—after Mendelsohn threatened to withdraw as counsel—Blackburn sent an email containing a U.S.P.S. tracking number that, according to U.S.P.S. records, was never sent through the U.S. mails. Then, when Mendelsohn informed Blackburn that it had never received this phantom package, Blackburn furthered the alleged fraud by requesting a "stop pay" on the check. Absent any current evidence to the contrary, the obvious inference to be drawn from this evidence is that Blackburn lied when he said he had placed the

5

check in the mail.  The Court finds, therefore, that Mendelsohn will likely succeed on at least some of its common law fraud claims.

**2.      Irreparable Injury**

Although a finding of irreparable injury will not be found in a typical "run-of-the-mill damages action," an irreparable injury can be demonstrated in a damages action if the plaintiff can show that absent the preliminary injunction "plaintiff[] will probably be unable to recover those funds."  Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, (3d Cir. 1990); see also Ambrogi v. Reber, 932 A.2d 969, 975 (Pa. Super. 2007) ("The entry of a preliminary injunction for the purpose of enjoining the dissipation of assets in anticipation of a lawsuit is not a novel event.").  To meet its burden of proof that funds will not be recoverable without a preliminary injunction, a plaintiff must produce more than mere "conclusory affidavit[s]."  Id. (quoting De Beers Consol. Mines v. U.S.,  325 U.S. 212, 222 (1945)); accord Vaccaro v. Sparks, No. 11-0164, 2011 WL 772394, at *2 (C.D. Cal. Feb. 1, 2011) (denying preliminary relief because "[t]he only support that Plaintiffs offer for the specific claim that Defendants are likely to dissipate assets . . . is the conjectural assertion that 'Sparks will go to any length to achieve his goal [of defrauding Plaintiffs]" (alterations in original)).

Here, Mendelsohn has provided much more than mere conclusory allegations that Titan plans to dissipate its assets.  Mendelsohn has introduced records demonstrating that Titan has recently engaged in negotiations with a third party in South Carolina to purchase a substantial percentage of its assets.  Blackburn himself testified at the hearing that Titan's main goal at the present time is to liquidate all of its remaining assets.  As in Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), it can thus be reasonably concluded that "absent an injunction the judgment probably would go unsatisfied in light of [Titan's] insubstantial existence."  See id. at 1373-74

(affirming district court's grant of preliminary injunction to prevent dissipation of financial assets).

Although Blackburn testified that Titan would be willing to voluntarily place the proceeds of a sale into an escrow, the Court believes Blackburn's prior deceptive behavior warrants judicial monitoring at the present time. See Fid. Nat'l Title Ins. Co. v. Castle, No. 11-0896, 2011 WL 5882878, at *6 (N.D. Cal. Nov. 23, 2011) ("[W]hen allegations of past fraud are coupled with supplemental evidence that demonstrates a likelihood of dissipation, courts may freeze assets."); see also Andrews v. Holloway, No. 95-1047, 1995 WL 875883, at *16 (D.N.J. Nov. 9, 1995) (finding it appropriate, in granting preliminary injunction, to consider defendant's allegedly fraudulent course of conduct in underlying complaint).

### 3. Extent of Harm to Titan & Blackburn

Due to the limited scope of the injunction that the Court has issued, neither Titan nor Blackburn will suffer any harm. As discussed below, the injunction does not prevent Defendants from selling Titan's assets; it only requires that they provide advance notice to Plaintiff of any sale of Titan's assets worth more than $10,000.

### 4. Public Interest

The Court recognizes that a preliminary injunction should be consistent with the public interest, or at least not inconsistent with the public interest. Although this is a private dispute between a law firm and a former client, the ramifications are somewhat broader. Defendant Titan has shown a propensity of getting involved in litigation, retaining lawyers, and then reneging on its payment obligations. The record is replete with Titan's counsel being forced to withdraw counsel because of Titan's non-payment practices. These disputes take a toll on the judges supervising these cases primarily because a corporation must always be represented by

counsel. When Titan refuses to pay its counsel, a judge will most likely allow the unpaid counsel to withdraw, but Titan remains a party. These recurring motions of counsel to withdraw, and the predicament a judge faces when a corporation is not represented by counsel, are inconsistent with the efficient flow of litigation and represent a burden on the Court. This Court, therefore, sees a public interest component in the deterrent value of granting the injunction, so that Titan, itself, will no longer have any incentive to conduct its business in this fashion, and other companies that are involved in litigation will know that a preliminary injunction may be issued as a result of their retaining of counsel with no intent of paying counsel fees.

## V. FORM OF RELIEF

The Court entered a preliminary injunction of a very limited nature, and required the parties to expedite completion of discovery and proceed to a final hearing within ninety (90) days. Although the temporary restraining order that this Court entered requires Titan to give advance notice of certain activities, now that Plaintiff has a judgment against Titan, Plaintiff can record the judgment in every jurisdiction in which Titan has assets or does business. The entry of the judgment against Titan has thus provided Mendelsohn with a substantial advantage.

The Court finds the most equitable relief is to enjoin Titan from selling any asset over a minimum amount ($10,000) without giving at least seven (7) days advance notice to Plaintiff. Assuming there is going to be a sale over the minimum amount, then Titan must give at least seven (7) days notice. At that point, Plaintiff can inform itself as to the nature of the transaction, whether the funds to be realized by Titan may be more than sufficient to compensate secured creditors, or other judgment creditors who have prior liens against Titan. If not, then Plaintiff can presumably make arrangements with Titan that it will be paid out of the proceeds of this sale, or if necessary, come into this Court for emergency relief. The Court will not require an escrow

8

at this time because the hearing showed Titan has secured creditors with priority over Mendelsohn.[2]

                                                             BY THE COURT:

                                                             /s/ Michael M. Baylson

                                                             _____

                                                             Michael M. Baylson, U.S.D.J.

O:\CIVIL 12\12-453 Mendelsohn v Titan\12cv453.opinion.docx

---

[2] The Court notifies any counsel which enters an appearance for Titan that it will not be allowed to withdraw for any reason.