**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MENDELSOHN, DRUCKER, | : | CIVIL ACTION |
| & ASSOCIATES, P.C. | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| TITAN ATLAS MANUFACTURING, INC., | : | NO. 12-0453 |
| | : | |
| and | : | |
| | : | |
| JEREMY BLACKBURN, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM RE: DEFENDANT TITAN'S MOTION**
**TO VACATE THE DEFAULT JUDGMENT**

**Baylson, J.**                                                              **May 2, 2013**

## I.     INTRODUCTION

On January 15, 2013, the Court entered a default judgment against the corporate

Defendant,[1] Titan Atlas Manufacturing, Inc. ("Titan"), for its failure to be represented by

counsel.  (ECF No. 64).  On January 24, 2013, new counsel for Titan entered an appearance,

(ECF No. 73), and filed a Motion to Vacate the Default Judgment (ECF No. 77).  The Plaintiff,

Mendelsohn, Drucker, & Associates, P.C. ("Mendelsohn"), responded to this motion (ECF No.

78) and Titan filed a reply (ECF No. 82).  For the reasons set forth below, the Court will DENY

Titan's motion.

## II.     FACTUAL & PROCEDURAL BACKGROUND

Plaintiff, a law firm, initiated this action against Titan, and its CEO, Jeremy Blackburn,

on the basis that Titan's failure to pay Plaintiff for over $400,000 in legal fees, and Blackburn's

---

[1] This case is still open against the individual Defendant, Jeremy Blackburn, an officer of Titan.

misrepresentations about Titan's ability to pay, constituted both breach of contract and fraud.

On February 3, 2011, Titan signed[2] an engagement letter to secure Plaintiff as its counsel for a complex patent action that was soon to be filed in a Virginia court. On November 23, 2011, after months of repeated requests for payment went unheeded,[3] Plaintiff moved to withdraw as Titan's counsel, which Titan opposed.[4] Emergency Mot. to Withdraw, Titan Atlas Mfg. Inc. v. Frank A. Sisk "Virginia Patent Case", No. 11-0012, (W.D. Va. Nov. 23, 2011), ECF No. 113. The Virginia court, which conducted an in camera review, found "good cause" to support Plaintiff's request. Order, "Virginia Patent Case", No. 11-0012, ECF No. 120. On December 5, 2011, the Virginia court granted Plaintiff's motion and ordered Titan to secure new counsel within 30 days. Id.

In January of 2012, the same month Plaintiff initiated the instant action in this Court, Titan entered an agreement with two law firms (Dunlap Weaver, LLC and Zito TLP) to represent Titan in its Virginia litigation. As with Plaintiff, however, these two firms were forced to withdraw when, after more than eight months of litigating the case, it became clear that Titan would not pay them for their representation per the terms of the parties' contractual agreement. After giving Titan "ample notice and opportunity to cure," DunlapWeaver and Zito TLP filed their motion to withdraw on October 12, 2012. Emergency Mot. to Withdraw, "Virginia Patent Case", No. 11-0012, ECF No. 248. The Virginia court, which conducted an in camera review to assess the merits of the firms' assertions, found that Titan had "failed to pay its counsel fees" and

---

[2] Blackburn was the Titan representative who signed the engagement letter and was the only Titan officer or employee that communicated with Plaintiff during the entire course of events relevant to this dispute.

[3] During the approximately nine months that Plaintiff represented it, Titan only made three payments for a total of just $40,000. Plaintiff has provided a detailed chronology of Titan's repeated failure to respond to Plaintiff's payment requests. (ECF No. 15). Plaintiff's account is fully corroborated by emails produced at the preliminary injunction hearing. See Pl's Hearing Ex. P12.

[4] Titan sent two letters to the Virginia court opposing Plaintiff's motion to withdraw, one on November 23, 2011, and the other on December 1, 2011 The first letter, which is not included in the Virginia court's electronic filing system, was provided to this Court by Plaintiff. (ECF No. 15-2). The second letter is available in the docket (#119) of the Virginia proceeding.

was "in substantial breach of its agreement with counsel."  Order, "Virginia Patent Case", No. 11-0012, ECF No. 288.  On October 22, 2012, the Virginia court granted the firms' motion to withdraw and warned Plaintiff that it would "not permit any scheduling changes or delays solely to allow new counsel to appear for Titan."  Id.

DunlapWeaver and Zito TLP were not the only law firms burned by Titan's failure to pay its substantial legal expenses in 2012.  Obermayer Rebmann Maxwell & Hippel LLP ("Obermayer"), the law firm that initially represented Titan in the instant action, experienced the same fate as well.  In March, after Titan was placed in default for failing to appear, plead, or otherwise defend, Titan retained Obermayer to represent it and moved for an extension of time to file a response to Plaintiff's Complaint (which the Court granted).[5]  (ECF No. 20).  Obermayer entered its appearance on March 16, 2012.  (ECF No. 10).  As with the other firms, Obermayer was forced to withdraw after accumulating significant, uncompensated expenses during the nearly 10 months it represented Titan.  In its December 3, 2012 motion to withdraw, Obermayer noted that "the vast majority" of its "substantial" fees and costs had "gone unpaid for more than 120 days," and that it had "informed Defendants multiple times . . . that it would be forced to seek leave to withdraw as counsel if the outstanding legal fees and costs were not paid."  (ECF No. 47).

On January 7, 2013, the Court held a hearing on Plaintiff's motion for a temporary restraining order,[6] which the Court granted.  (ECF No. 57).  A hearing was then scheduled for January 11 to address both Obermayer's motion to withdraw and Plaintiff's motion for a preliminary injunction.  In scheduling the hearing on these motions, the Court warned Titan—

---

[5] Titan, along with co-defendant Blackburn, responded with a Motion to Dismiss on May 14, 2011, (ECF No. 21), which the Court denied on August 2, 2011, Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc., 885 F. Supp. 2d 767 (E.D. Pa. 2012).  Defendants thereupon filed their Answer on August 16, 2011.  (ECF No. 38).
[6] Plaintiff sought a restraining order that would prevent Titan from dissipating its assets.  (ECF No. 53).

both at the January 7 hearing and in a written Order issued the following day—that, if Titan did

not pay its counsel, the Court might find it in default.  At the January 7 hearing, the Court

instructed Titan's attorney (Zachary Davis from Obermayer):

> You ought to tell your client that we've done some research and it
> looks to me that if a corporation is unwilling to pay its counsel,
> then the judge is warranted in holding [it] in contempt. So, if that's
> where we are Friday, tell your client that if they haven't made
> arrangements for you to represent them—by arrangements, I mean
> paying you whatever they owe you so far and paying you to
> prepare for two days of hearing—that I may hold them in contempt
> or I may enter a default. . . . I'm going to put that in the order.

The written Order repeated this warning, stating: "If, by the time of [the] hearing, Defendant

Titan has not made arrangements to pay current counsel, or retain other counsel, the Court may

exercise its authority to grant the Motion to Withdraw and enter a default judgment against it."

(ECF No. 57).

The Court's warnings went unheeded.  At the January 11 hearing, Mr. Davis informed

the Court that Titan was still refusing to pay any of the fees due under the parties' contractual

agreement, and that Obermayer had "received no additional payment beyond the initial retainer."

Upon hearing this, the Court reiterated to Titan, via its CEO Mr. Blackburn, that:

> Under the law, the law of Pennsylvania, which governs this
> situation, Mr. Blackburn, a corporation must be represented by
> counsel. And the law allows a judge to enter a default, that is, to
> enter a finding of liability against a corporation if the corporation
> refuses to retain counsel to represent it. And the absence of funds
> is not an excuse.  That's well-settled law.  And as I made clear at
> the hearing on Monday—I assume Mr. Davis related this to you—
> if the Obermayer firm has not been paid, I have no authority to
> make them work for nothing, and they have a right to withdraw.
> And that would require me, as I understand the law, to enter a
> default against the corporation.

Blackburn told the Court that Titan "would love for [Obermayer] to stay in," but that

"financially we don't have the cash in the company to continue to pay their fees."  Although

Blackburn claimed Titan was exploring the possibility of hiring another law firm, he recognized that "a new firm would require an additional retainer and we'd have to go through that process again." Titan objected to Obermayer's motion to withdraw, therefore, "based on the fact that we don't want to get defaulted." As Blackburn noted, we'd "like to be able to continue to defend ourselves in this, but, you know, it's up to the court to decide."

The Court thereupon granted Obermayer's motion to withdraw and stated that, while it was not going to enter a default "right now," it was still considering doing so. The Court proceeded to hold the hearing on Plaintiff's preliminary injunction motion, where Plaintiff argued that Titan was liquidating its assets in an attempt to become "judgment proof." To support this, Plaintiff introduced evidence documenting, inter alia, that: (1) Titan had a contractual obligation to pay Plaintiff for its legal services; (2) Titan failed to pay for over 90 percent of the legal expenses Plaintiff incurred; (3) Blackburn resorted to fraudulent conduct to induce Plaintiff to postpone withdrawing at a critical juncture in the case;[7] and (4) Blackburn's current responsibility, as Titan's last remaining employee, is to liquidate the company's assets as quickly as he can. Since Titan did not have counsel, it could not participate in the hearing. Blackburn, as an individual defendant, was allowed to proceed pro se.

On January 15, 2013, eight days after the Court first notified Titan that it risked default if it did not pay counsel, the Court entered default judgment against Titan in the amount of $402,511.06 plus interest and costs. (ECF No. 64). The judgment, which was based on the

---

[7] The documents show that, after Plaintiff threatened to withdraw as counsel, Blackburn emailed a United States Postal Service (U.S.P.S.) tracking number to one of Plaintiff's attorneys (David Cargille) with the obvious implication that the tracking number was proof Blackburn had placed the requested payment in the mail. Pl's Hearing Ex. P12, Email 35. According to U.S.P.S. records, however, no package was ever sent with the tracking number Blackburn provided. Pl's Hearing Ex. P13. Not surprisingly, Plaintiff never received the payment. When Plaintiff notified Blackburn that it had not received the package, Blackburn perpetuated this fraud by acting as if the package (which USPS records show was never sent) had somehow been lost in the mail. Pl's Hearing Ex. P12, Email 38.

meticulous accounting records produced at the January 11 hearing,[8] was limited to the harm Plaintiff suffered from Titan's breach of contract.  Plaintiff moved to amend this judgment by requesting the Court add punitive damages for Titan's fraudulent conduct.  (ECF No. 67).  This motion was denied.  (ECF No. 75).  On January 23, the Court granted Plaintiff's motion for a preliminary injunction, albeit with a significantly narrower scope than Plaintiff requested.[9]

Mendelsohn, Drucker, & Assocs., P.C. v. Titan Atlas Mfg., No. 12-0453,  2013 WL 247245, at *4-5 (E.D. Pa. Jan. 23, 2013).

Titan, which professed to having no ability to pay Obermayer on January 11, and which had refused numerous pleas for payment from three other firms for the greater part of two years, acted quickly when the Court entered default judgment.  By January 23, 2013, Titan had secured new counsel, and on January 29, 2013, its counsel filed the motion to vacate that is presently before the Court.  (ECF No. 77).

III.   LEGAL STANDARD[10]

The Third Circuit has stated that it "does not favor default judgments and in a close case, doubts should be resolved in favor of setting aside the default and reaching the merits."

Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987).  Where a party disputes the propriety of a default judgment, the legality of the judgment becomes the threshold question.

See Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985).  If entering the judgment was proper, the court has "broad discretion" in determining whether to set it aside.

Ewing & Kreiser, P.C. v. Stephens, No. 08-5490, 2009 WL 1183347, at *1 (E.D. Pa. May 1,

---

[8] See Pl's Hearing Ex. P8.
[9] Plaintiff had requested an injunction that would require Titan to deposit the proceeds of any sale into a Court-supervised escrow account.  (ECF No. 53).  The Court did not grant this proposed form of relief.  Instead, the Court enjoined Titan from selling any asset over $10,000 without giving at least seven days' notice to Plaintiff. Mendelsohn, 2013 WL 247245, at *4-5.
[10] The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

2009) (Baylson, J.).  In exercising this discretion, courts "must consider whether vacating the default judgment will visit prejudice on the plaintiff, whether the defendant has a meritorious defense, and whether the default was the result of the defendant's culpable conduct."  Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988). Where a defendant does not have a meritorious defense, the court need not look further, as there is "no point" in setting aside a default judgment if the party cannot "demonstrate the possibility of his winning."  United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).

**IV.   ANALYSIS**

Titan asserts that the sua sponte entry of default judgment ran afoul of Rule 55(b)(2) of the Federal Rules of Civil Procedure, and the Third Circuit's requirement that district courts must consider the six factors set forth in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).  Neither of these arguments, however, is availing.  For the following reasons, the Court finds that default judgment was properly entered and Defendant's lack of a plausibly meritorious defense counsels against vacating it.

**A.     District Courts Have "Inherent Power" to Enter Default Judgment**

The "inherent power" of district courts to "levy sanctions in response to abusive litigation practices," Roadway Exp., Inc. v. Piper, 447 U.S. 752, 755 (1980), includes "[t]he power to grant default judgment," Travelodge Hotels, Inc. v. Meridian Global Invs., LP, No. 11-2599, 2012 WL 2341466, at *2 (D.N.J. June 15, 2012) (citing Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984)); see also Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co., 271 F.Supp.2d 151, 154 (D.D.C. 2003).  As in the "parallel context" of Rule 41(b)(2), Hritz, 732 F.2d at 1180-81 (citing Link v. Wabash R.R. Co., 370 U.S. 626, 630-32 (1962)), Rule 55(b)(2)'s statutory text—which applies to motions filed by a party—does not apply to or preclude district courts from entering

7

default judgments sua sponte, particularly where, as here, exceptional circumstances justify the exercise of this inherent power.  This conclusion accords with the position of most, if not all, courts of appeals to address the interplay of Rule 55 with the inherent powers of a district court. See City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011) ("Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, a district judge also possesses the inherent power to enter a default." (citations omitted)); Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 692-93 (1st Cir. 1993) ("By its very terms . . . Rule 55(b)(2) does not apply where, as here, there is no motion for default pending and where the court has, on its own motion, found a party to be in default for a failure to appear."); Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc., 856 F.2d 873, 877 (7th Cir. 1988) (holding that "the notice requirement of Rule 55(b)(2) does not apply" where district court issues default judgment on its own motion).

Although the Third Circuit has yet to squarely address the impact of Rule 55 on inherent powers, it has cited approvingly to the prevailing rule in other circuits.  See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1179 n.15 (3d Cir. 1993) ("Courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices." (quoting TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 916 (9th Cir. 1987))).  In Sourcecorp Inc. v. Croney, 412 F. App'x. 455 (3d Cir. 2011) (non-precedential), the Third Circuit based its ruling on a recognition that "some courts of appeals have held that, at least under egregious circumstances, district courts may enter default judgments sua sponte and, moreover, may do so without advance notice to the defendant."  Id. at 458-59.  Based on this recognition, the Sourcecorp panel vacated a default judgment because the district court "neither followed the notice provision of Rule 55(b), *nor did it intentionally enter the default judgment*

*sua sponte*." Id. (emphasis added). "The problem," the court explained, was *not* that the district court entered a default judgment sua sponte, but that it did so on the erroneous basis that the plaintiff requested it. Id. at 459.

**B.     Default Judgment Is Appropriate for Corporations That Fail to Retain Counsel**

Default judgment is an appropriate sanction for corporate defendants that fail to retain counsel pursuant to a court order. See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 918 (3d Cir. 1992) ("Nor do we doubt that the district court in this case could have imposed a default judgment against the defendants for failure to comply with its own unambiguous orders to obtain substitute counsel . . . ."). Because a corporation cannot represent itself pro se in federal court, Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-02 (1993), a corporate defendant's failure to retain counsel after being ordered to do so is a failure to "otherwise defend" under Rule 55 that justifies a default, Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1310 (2d Cir. 1991); J & P Recovery, Inc. v. R.C. Dolner, Inc., No. 00-5761, 2002 WL 1774058, at *1 (E.D. Pa. Aug. 1, 2002). Default judgments have been entered and affirmed against corporate defendants on this basis, whether or not the judgment was entered upon a party's motion,[11] or sua sponte by the court, see, e.g., United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc., 128 F.3d 86, 88-89 (2d Cir. 1997); United States v. High Country Broad. Co., Inc., 3 F.3d 1244, 1245 (9th Cir. 1993); Eagle Assocs., 926 F.2d at 1310.

---

[11] Many district courts in the Third Circuit have granted motions for default judgment when the corporate defendant repeatedly fails to obtain counsel. See, e.g., Critelli v. Culture Club of NYC, Inc., No. 05-5877, 2010 WL 5392677, at *3 (D.N.J. Dec. 7, 2010); Harrington v. All Am. Plazas, Inc., No. 08-3848, 2010 WL 2710573, at *2 (D.N.J. July 7, 2010); Fetter v. N. Am. Alcohols, Inc., No. 06-4088, 2009 WL 2179659, at *3-4 (E.D. Pa. July 21, 2009); Ario v. Morelli, No. 06-1024, 2008 WL 314578, at *1 (D.N.J. Jan. 30, 2008); Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp., 531 F. Supp. 2d 652, 656 (M.D. Pa. 2007); Ohntrup v. Gallagher, No. 03-4891, 2007 WL 2462619, at *4 (D.N.J. Aug. 27, 2007). The fact that the plaintiffs took the initiative to file motions for default judgment does not mean that the courts in these cases could have not done so sua sponte.

## C.      Entering of Default Judgment Did Not Violate Rule 55(b)(2)'s Notice Provision

Although default judgments entered on a court's own motion are not governed by Rule

55(b)(2),[12] the Court finds that, even if they were, entering default judgment in this case did not

violate the seven-day notice provision set forth in the Rule.  See Fed. R. Civ. P. 55(b)(2)

(requiring that a party moving for default judgment must serve "written notice" of the motion to

the adverse party "at least 7 days before the hearing").  The record shows Titan had more than

seven days' notice that the Court was considering entering a default if Titan did not secure

counsel.  On January 7, 2013, the Court warned Titan's counsel that it could enter a default if

Titan had not secured counsel by the January 11 hearing, and reiterated this warning in a written

Order on January 8.  (ECF No. 57).  It was not until January 15, 2013—eight days after the

initial warning—that the Court entered the default judgment.  (ECF No. 64).  During these eight

days, Titan was aware—or should have been aware—that "the court had positioned itself to hold

[Titan] liable by default or otherwise" if Titan did not retain counsel.[13]  See Goldman, 982 F.2d

at 693 n.16.  As in Goldman, therefore, "the situation against which Rule 55(b)(2) guards was

not present in this instance."  Id.

## D.      Poulis Factors Support the Default Judgment

The Third Circuit requires that district courts consider the six Poulis factors[14] before

entering a default judgment as a sanction.  See Knoll v. City of Allentown, 707 F.3d 406, 407

---

[12] See Sourcecorp, 412 F. App'x. at 458 ("[A]t least under egregious circumstances, district courts may enter default judgments sua sponte and, moreover, *may do so without advance notice to the defendant*." (emphasis added)); Anilina Fabrique, 856 F.2d at 877 (holding that "the notice requirement of Rule 55(b)(2) does not apply" where district court issues default judgment sua sponte).

[13] It is immaterial that Obermayer did not formally file its withdrawal of appearance until January 16.  The Court granted Obermayer's motion to withdraw during the January 11 hearing, at which point Obermayer left the courtroom, leaving Titan unable to defend itself in the case.

[14] The six factors are: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." Poulis, 747 F.2d at 868.

10

(3d Cir. 2013).  The Third Circuit has also indicated, however, that "[w]hen a defendant fails to appear and perhaps under other circumstances covered by Rule 55, the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred." Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990). Since a corporate defendant's failure to have counsel constitutes a failure to defend under Rule 55(a), J & P Recovery, 2002 WL 1774058, at *1, an express analysis of the Poulis factors may not be required in this case.  Regardless, the default judgment entered against Titan is fully supported by the Poulis factors.  Indeed, although a default judgment need not be supported by each of the six Poulis factors, Hoxworth, 980 F.2d at 919, each factor supports entering default judgment in this case.

*1.     Titan Is Responsible for Its Actions*

Titan is responsible for its failure to secure counsel.  It is well settled that financial difficulties are not an excuse for a corporation's failure to have legal representation.  See Dolphin Plumbing Co. of Fla., Inc. v. Fin. Corp. of N. Am., 508 F.2d 1326, 1327-28 (5th Cir. 1975); Talasila, Inc. v. United States, 240 F.3d 1064, 1066-67 (Fed. Cl. 2001); Pa. Land Holdings Corp. v. Mason, No. 06-1150, 2008 WL 3246868, at *4 (W.D. Pa. Aug. 6, 2008). Further, this is not a situation where Titan had no notice of its need to find a workable arrangement with counsel: Titan received continuous warnings for the greater part of two years that, if it persisted in not paying its bills, its counsel would need to withdraw.  Titan repeatedly ignored these warnings, and in at least one instance, engaged in fraudulent conduct to induce counsel to continue to represent it.[15]  Why or how Titan was able to so quickly secure the necessary funding to obtain new counsel following the entry of default judgment is not known. It raises the inference, however, that Titan's refusal to pay Obermayer on January 11 was done

---

[15] See supra note 7 for evidence of fraudulent inducement by Blackburn.

with the intent to delay or otherwise prevent the Court from acting on Plaintiff's motion for the preliminary injunction,[16] and/or to continue a manipulative strategy that has been evident in its prior dealings (i.e., only paying attorneys for initial fees and then opting to find new counsel when the attorneys are forced to eventually withdraw for nonpayment).  See Wyndham Hotels & Resorts, LLC v. Rhonda & Sons, Inc., No. 10-2868, 2011 WL 831940, at *3 (D.N.J. Mar. 1, 2011) ("It is particularly incredible that Defendant was able to retain a lawyer and submit a motion on January 18th, but was unable to do the same ten days earlier . . . .").

2.    *Prejudice*

Titan's conduct prejudiced Plaintiff, not to mention the Court, because the refusal of a corporation to retain a lawyer generally derails the "proper and efficient litigation" of a case.  J & P Recovery, 2002 WL 1774058, at *1.  Even if there was no prejudice, however, default judgments can be warranted "for reasons of deterrence and punishment" alone.  See Lightning Lube, 4 F.3d at 1179 n.15.  As this Court discussed when granting the preliminary injunction, there is a need to deter the type of conduct that Titan has engaged in.  Mendelsohn, 2013 WL 247245, at *4.  The failure of a corporation to be represented by counsel creates a burden on the judicial system that impedes the efficient flow of litigation.  See Hritz, 732 F.2d at 1180 (stating that the inherent power to dismiss a case stems from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (quoting Link, 370 U.S. at 630-31)).  Furthermore, corporations that are liquidating their assets should be deterred from the notion that the only downside to not paying counsel fees is a motion to withdraw followed by payment of an initial retainer fee to another firm.  Entering a default judgment in this case thus serves a valuable deterrent function, since corporations in Titan's position will now have less incentive to retain counsel with no intent of paying the fees.  As a

---

[16] The Court eventually granted the motion, albeit with much less relief than Plaintiff requested.

matter of simple economics, no law firm is going to represent a corporation in commercial litigation without being paid.  By deterring the conduct that Titan has engaged in, corporations with significant financial difficulties will have a better chance of having their day in court because law firms will have less reason to fear non-payment.

3.    *Titan Has a History of Dilatoriness*

The record in this case shows a history of dilatoriness.  Titan is a serial offender of the principle that corporations must be represented by counsel.  Over the past 24 months, not one, but four law firms have had to withdraw from representing Titan due to Titan's repeated failure to pay for the legal representation it received.  This is particularly troubling given the substantial nature and duration of the legal representation the firms provided: each firm represented Titan in active litigation for over 8 months, and yet Titan paid little beyond the initial retainer fee.

4.    *Titan's Conduct Was Willful and in Bad Faith*

For the reasons already discussed, the Court clearly believes that Titan's conduct was willful and in bad faith.  Although Titan's motive cannot be definitively known, its behavior—when coupled with its imminent liquidation and meritless defenses (discussed below)—raises a strong inference that it has abused the judicial process.  See Werner v. Plater-Zyberk, 799 A.2d 776, 785 (Pa. Super. 2002) (defining abuse of process as using a judicial process "to accomplish a purpose for which the process was not designed").  Specifically, the Court harbors a strong suspicion that Titan, aware that it lacked a meritorious defense to Plaintiff's breach of contract claim, attempted to use judicial processes for the purpose of postponing disposition until it had become judgment proof.  Even if this was not the motive, the Court finds Titan's conduct willful, culpable, and deserving of significant sanction.

*5.     Alternative Sanctions*

Based on the necessity of deterring corporate defendants from repeating the kind of exploitative conduct that Titan has engaged in, the Court is of the opinion that no sanction short of default will be sufficient in this case.

*6.     Meritoriousness of Titan's Defense*

The last <u>Poulis</u> factor deals with the meritoriousness of a party's claim or defense. A defense is deemed meritorious if the allegations, assumed as true, "constitute a complete defense." <u>Poulis</u>, 747 F.2d at 869-70. Titan appears to believe that this means any alleged defense, however fanciful or implausible, is sufficient to stave off default. This, however, is not the law. <u>See</u> <u>United States v. $1,322,242.58</u>, 938 F.2d 433, 439 (3rd Cir. 1991) (stating that "conclusory language" is "insufficient to establish a meritorious defense"). Whereas Plaintiff's entitlement to relief was established through comprehensive and meticulous documentation, Titan asks this Court to credit threadbare, implausible allegations that are plainly contradicted by the record.

First, Titan asks this Court to rely upon Blackburn's assertion that Titan was "fraudulently induced" to retain Plaintiff by Plaintiff's claim that "the case was a 'slam dunk' which would cost Titan anywhere from $10,000 – $40,000." Titan's Mot. to Vacate at 10 & Ex. B ("Blackburn's Decl.") at 4. Incredibly, just three weeks prior to filing this declaration, Blackburn testified at his deposition that Plaintiff estimated the case would be "200,000 dollars or less." Pl's Resp. Br., Ex. B to Kevin Drucker Decl. ("Blackburn Dep."), at 5. As Plaintiff rightfully points out, "both of these sworn statements cannot possibly be true." Pl's Resp. Br. at 17. Leaving aside this contradiction (and its possible perjury implications), Blackburn's assertion woefully lacks in the type of details necessary for meeting the heightened pleading

14

requirements of a fraud claim.  See Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004)

(abrogated on other grounds) (stating that plausible fraud claims require "some measure of

substantiation," including, inter alia, factual allegations of "who made a misrepresentation to

whom and the general content of the misrepresentation").  The deficient nature of the fraud

allegation is particularly problematic given Titan's failure to produce a single document showing

Plaintiff ever made the claim, and the fact that nothing in the engagement letter or joint

representation agreement alludes to it.[17]  For a provision so purportedly instrumental to a

corporation's decision to enter a contract of significant import, the absence of any written

memorialization is, at best, implausible.

Titan also asks this Court to credit Blackburn's assertion that he "demanded that Plaintiff

immediately cease all further work on the file until the billing issues[18] could be resolved."

Blackburn's Decl. at 5-6.  To support this claim, Blackburn references "Exhibit H" to Titan's

motion.  Exhibit H contains a two-sentence email that Blackburn sent to Plaintiff on August 17,

2011.  In the email, Blackburn instructed Plaintiff to not "discuss strategy" with Titan's co-

plaintiff, Strata,[19] without Titan's input "until I resolve all the outstanding issues between the

parties."  Far from demanding that Plaintiff "cease all further work," the email simply requested

an alteration in what Plaintiff could discuss with Strata.  And, far from basing this request on

---

[17] The only circumstantial support Titan provides for this assertion is the fact that Plaintiff required a "relatively small" retainer fee of $10,000.  Blackburn Decl. at 4.  This fact has little, if any, probative value.  Indeed, the exhibit that Titan produced to document the retainer fee (a February 18, 2011 email from Plaintiff), describes the $10,000 fee as being "in accordance with [Plaintiff's] customary firm policies."  Blackburn's Decl., Ex. B.  Further, Titan fails to mention that Plaintiff required a retainer fee of $10,000 for *each claim*.  Since Titan filed declaratory judgments for both non-infringement and patent invalidity, the initial retainer would have been $20,000, not $10,000.  Making Blackburn's claim yet more implausible is the fact that he himself characterized the Virginia litigation as a "complex matter" in which Titan and its co-plaintiff had "formulated numerous claims and defenses" for which Plaintiff "prepared a comprehensive plan of attack."  (ECF No. 15-2).
[18] Blackburn alleges that "Titan informed Plaintiff that their [sic] fees were excessive" and "that they were not performing the work for which Defendant had engaged Plaintiff."  Blackburn Decl. at 5.  He fails, however, to point to any correspondence where he actually made these assertions.
[19] Plaintiff and Strata had entered into a joint representation agreement, on April 3, 2011, whereby Plaintiff would represent both Titan and Strata, with Titan (absent a few exceptions) paying the costs.  Compl. Ex. 4.

Titan's "billing issues" with *Plaintiff*, Blackburn made the request based on Titan's "outstanding issues" with *Strata*.

Yet another implausible assertion that Titan asks the Court to credit is Blackburn's claim that Plaintiff represented Titan against its consent.  The only support that Blackburn provides for this peculiar assertion is the August 17, 2011 email discussed above.  Beyond the deficiencies already identified, Plaintiff has produced emails between Blackburn and Plaintiff which show that Plaintiff, not Titan, was the party reluctant to move forward with the case.  On the day after Blackburn sent the email, for example, Plaintiff warned Blackburn that "we will be forced to withdraw from representation of both Titan and Strata on 8/25/11" if Titan could not come up with a way to make the necessary payments.  Pl's Br., Ex. E at 3.  Several weeks later, Blackburn sent Plaintiff a payment of $10,000, and stated that Titan had been "structuring a payment plan" to keep Plaintiff as its counsel.  Pl's Hearing Ex. P12, Email 31.  Other documents unequivocally show Titan encouraging Plaintiff to move forward with the case, such as a September 27th email in which Blackburn asked Plaintiff to "Please send Mike and I the latest draft of the Answer," Pl's Hearing Ex. P12, Email 36, and Titan's court filings that *sought to block* Plaintiff from withdrawing as counsel, see <u>supra</u> note 4.

A similar lack of credibility permeates Titan's complaints about the quality of Plaintiff's representation and reasonableness of Plaintiff's fees.  Titan complains about the quality of Plaintiff's representation, but has failed to identify a single email where Blackburn made this an issue.  Moreover, Blackburn himself testified at his deposition that the reason Titan stopped paying Plaintiff was because "the company needed to go through restructuring or recapitalization . . . in order to obtain the necessary cash" and that "there was never at any time a decision [by Titan] that said we are not going to pay Mendelsohn" for some other reason.  Blackburn Dep. at

16

2-3.  But even if Titan was dissatisfied with Plaintiff's services, dissatisfaction could hardly be deemed a "complete defense" to Plaintiff's breach of contract claim.  See Poulis, 747 F.2d at 869-70 (stating that "meritorious defense" must be a "complete defense" to liability).

Finally, although Titan claims that Plaintiff overbilled for the work it performed, Titan has provided no substantive basis to question the meticulous line-item accounting that Plaintiff has provided to document the $402,511.06 in unpaid expenses that the Court relied upon as the basis for the default judgment.  Nor has Titan explained how its objections to Plaintiff's accounting constitute a "complete defense."  The Court finds, therefore, that Titan has failed to show any plausible merit to its defenses in this case.

**E.     Vacating Judgment Is Not Warranted Due to Lack of Meritorious Defense**

Having found that the default judgment was proper, the Court must now consider whether to exercise its sound discretion to set it aside.  Harad, 839 F.2d at 982. In exercising this discretion, the Court notes that "[t]he threshold issue in opening a default judgment is whether a meritorious defense has been asserted."  Hritz, 732 F.2d at 1181; Ewing, 2009 WL 1183347, at *1.  A defendant cannot establish a meritorious defense with "simple denials or conclusory statements."  Worldwide Assocs., Inc. v. Golden Mark Maint. Ltd., No. 99-5889, 2000 WL 795894, *1 (E.D. Pa. June 9, 2000).  As discussed above, that is precisely what Titan has attempted to do.  Accordingly, the Court finds no basis to grant Titan's motion to vacate.

**V.     CONCLUSION**

Based on the foregoing considerations, the Court will DENY Titan's Motion to Vacate the default judgment.  An appropriate order follows.

O:\CIVIL 12\12-453 Mendelsohn v Titan\opinion_mtv.docx